UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| E.G.C., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:25-cv-00193-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANK BISIGNANO, *Commissioner of* | ) | **&** |
| *Social Security,* | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Plaintiff seeks judicial review of the administrative decision denying her claim for supplemental security income.  E.G.C. brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.[1]  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** E.G.C.'s Motion for Summary Judgment [R. 10] and **GRANT** the Commissioner's. [R. 12.]

**I**

Plaintiff E.G.C. protectively applied for disability insurance benefits and supplemental security income on April 23, 2021, and July 23, 2021, respectively.  The Social Security Administration denied her claims on initial review.  On reconsideration, the Social Security Administration again denied E.G.C.'s claim.  E.G.C. then had a hearing with Administrative Law Judge Boyce Crocker, which again resulted in a denial of E.G.C.'s benefits on April 16, 2024. The Appeals Council denied E.G.C.'s request for review of that decision, which led her to file

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

the instant Complaint with this Court, seeking review under 42 U.S.C. § 405(g). Both parties have now filed motions for summary judgment which are ripe for review.

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. See 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id*. § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id*. § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairment or combination of impairments, she is not disabled. *Id*. § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 303, Subpart P, Appendix 1, she is disabled. *Id*. §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. See *id*. C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id*. § 404.1520(a)(4)(iv). If so, she is not disabled. *Id*.

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. See *Id*. §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is

2

precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## A

The ALJ completed the requisite five-step analysis to determine E.G.C.'s disability status. [R. 8 at 16-31.] He first determined that E.G.C. meets the insured status requirements of the Social Security Act through December 31, 2026. [*Id*. at 24.] He then determined that E.G.C. engaged in substantial gainful activity during the period of April 2021 through September 2021, but also found that there has been a continuous 12-month period during which the claimant had not engaged in substantial gainful activity. [*Id*. at 24.] He noted, for the record, that the remaining findings pertain only to the period during which E.G.C. did not engage in substantial gainful activity. [*Id*.] Next, the ALJ found that E.G.C. suffered from the following severe impairments: obesity; restless leg syndrome; degenerative disc disease of cervical spine; osteoarthritis (OA) and meniscal derangement left knee status post arthroscopy; degenerative changes to the left shoulder; chronic obstructive pulmonary disease (COPD) / emphysema with oxygen use at night. [*Id*.] But at step three, the ALJ found that none of these impairments, nor any combination of them "[met] or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 …" [*Id*. at 26.]

Before proceeding to step four, the ALJ fashioned E.G.C.'s RFC. See 20 C.F.R. 404 § 1520(e). After considering the record, the ALJ determined that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she can stand or walk 4 hours out of 8, occasionally climb ramps and stairs; no ladders, ropes or scaffolds, frequently balance, occasionally stoop, kneel, crouch, crawl; frequently reach overhead with bilateral upper extremities; frequently handle and finger with left upper extremity; avoid concentrated exposure to pulmonary irritants and loud

noise work environments, avoid even moderate exposure to unprotected heights and moving machinery; and will need to use a cane for ambulation.

[R. 9 at 27.]  To make this finding, the ALJ first determined that E.G.C.'s medically determinable impairments could reasonably be expected to cause some alleged symptoms. [*Id.*]  The ALJ also found, however, that E.G.C.'s statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with "the medical evidence and other evidence in the record." [*Id.*]

Next, the ALJ proceeded to step four, concluding that E.G.C. is capable of performing past relevant work as an insurance clerk, because this job does not "requires the performance of work-related activities precluded by the claimant's residual functional capacity." [*Id.* at 30.]  Proceeding finally to step five, the ALJ heard from a vocational expert who testified that someone with the claimant's residual functional capacity "would be able to perform the enrollment or insurance clerk work as both generally and actually performed. [*Id.*]  Consequently, the ALJ found that E.G.C. had not been under a disability, as defined in the Social Security Act from April 23, 2021, through the date of his decision. [*Id.* at 31.]

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen*

4

*v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Here, E.G.C. raises two arguments in support of her motion for summary judgment. First, E.G.C. argues that the ALJ erred because he "failed to either include mental limitations he found credible in his RFC or to explain why he was omitting these credible mental limitations." Second, E.G.C. also argues that the ALJ erred because he "failed to either adopt or reject and explain his rejection of limitations offered by a medical source whose opinion he found partially persuasive." After considering the record, and the arguments related thereto set forth by E.G.C. and the Commissioner, the Court concludes that the ALJ's RFC is supported by substantial evidence and that he did not commit reversible error, and, consequently, E.G.C. is not entitled to relief.

**1**

First, E.G.C. contends that "the ALJ's failure to explain why she omitted [E.G.C.'s] proven mental functional limitations from the RFC finding was legal error." [R. 10 at 15.] When evaluating a claimant's mental impairments at steps two and three of the sequential analysis, the

regulations require the ALJ to follow the "psychiatric review technique." *Tony F. v. Comm'r of Soc. Sec.*, 2026 U.S. Dist. LEXIS 60388, at \*11 (W.D. Ky. Mar. 23, 2026) (citing 20 C.F.R. § 404.1520a).  Using the PRT, an ALJ must "rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: (1) an individual's ability to understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, and maintain pace; and (4) adapt or manage oneself." *Id*.  Courts refer to these four areas as the "paragraph B criteria" because "they parallel the criteria of Paragraph B of the adult mental disorder listings." *Id*.

In essence, E.G.C. argues that the ALJ's RFC analysis violated applicable SSA regulations which require an ALJ to consider "all of [the claimant's] medically determinable impairments" of which they are aware, including those that are not rated as "severe." [R. 10 at 2.]  E.G.C. does not contend that the ALJ's step two finding that her mental impairments were "mild" were not supported by substantial evidence.  Rather, E.G.C. contends that the ALJ erred by failing to more explicitly "adopt such mild mental limitations [into the RFC] or explain his reasons for omitting credible mental limitations from the RFC." [R. 13 at 1.]  In other words, E.G.C. effectively argues that the ALJ inappropriately ignored her mild, non-severe mental impairments in formulating her RFC and her ultimate determination that she could perform light work as an insurance clerk.  In E.G.C.'s view, this amounts to a failure to adhere to the requisite procedural regulations and thus constitutes reversible error.

The record demonstrates, however, that the ALJ adequately accounted for E.G.C.'s mental impairments in forming her RFC, precisely as she was required to under the regulations. Although the regulations clearly require the ALJ to give consideration to all impairments, even those deemed mild, in crafting the RFC, Courts in the Sixth Circuit broadly agree that an ALJ

6

does not commit reversible error merely by not including mild or moderate paragraph B findings in the RFC analysis. *B.G. ex rel. Estate of D.R. v. Bisignano*, 2026 U.S. Dist. LEXIS 123321, at *9-10 (E.D. Ky. June 4, 2026) (collecting cases); see e.g., *Wright v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 52908, at *17-19 (W.D. Mich. Mar. 22, 2021) (finding that ALJ did not err by excluding moderate "concentration, persistence or pace" step 3 finding in the RFC); *Jimmy O. v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 101559, at *7-10 (W.D. Mich. May 12, 2025) (rejecting the plaintiff's argument that the ALJ was required to include mental limitations in the RFC due to mild limitations found during the PRT); *Cantrell v. Colvin*, 2015 U.S. Dist. LEXIS 29728, at *26-33 (M.D. Tenn. Feb. 11, 2015) (rejecting plaintiff's argument that ALJ's failure to include moderate social functioning limitations in the RFC assessment constituted a fatal inconsistency).  In other words, an ALJ must make clear that the RFC is based on the totality of the claimant's impairments, including mild impairments, but is under no obligation to incorporate a mild or moderate paragraph B finding into the RFC.  In the recent opinion of *Napier v. Kijakazi*, Judge David L. Bunning explained the rationale for this rule as follows:

> Non-severe impairments do not necessarily cause functional limitations. A non-severe impairment, by definition, is one that "does not" have more than a "minimal" impact on the "claimant's ability to work."  Even so, it may contribute to a claimant's functional limitations when considered "in combination" with other impairments. As such, an ALJ must not only consider the impact of any non-severe impairments when assessing a claimant's RFC, but must also explain how any non-severe mental impairments affected the claimant's RFC.  However, that explanation need not be explicit.  An ALJ need not cabin his RFC analysis to the portion of the decision formally labelled as the RFC assessment.  Other sections of a written decision can tacitly explain why an ALJ's RFC finding did not account for a claimant's non-severe impairments.  Although an ALJ must consider all non-severe mental impairments at Steps 4 and 5, an ALJ who thoroughly discusses a non-severe impairment at Step 2 need not "expressly revisit" that impairment later in the written decision.  While it may be preferable for the ALJ to explicitly discuss why each non-severe impairment failed to translate into functional limitations, the issue is simply whether a reviewing Court

7

can follow the ALJ's rationale and meaningfully review the decision.

*Napier v. Kijakazi*, 2024 U.S. Dist. LEXIS 51910, at *5-6 (E.D. Ky. Mar. 23, 2024) (internal citations omitted).  In other words, SSR 96-8p and 20 C.F.R. § 404.1545(a)(2) make clear that an ALJ must consider non-severe mental impairments in crafting the RFC.  However, this consideration need not be explicit or further delineated in the RFC section of the opinion.  Rather, so long as the ALJ thoroughly discusses the non-severe impairment at Step 2 and makes clear that she considered the totality of the evidence in crafting the RFC, she has not erred.

On appeal, the Sixth Circuit provided additional instruction on determining whether the ALJ has adequately demonstrated that she considered the entirety of the claimant's mental limitations in crafting the RFC. *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025).  That opinion, which represents binding precedent upon this Court, illuminates the requisite standard.  The ALJ in *Napier* stated that in concluding that the claimant possessed "the residual functional capacity to perform light work," he had "considered all symptoms." *Id*. at 1007.  The ALJ further noted "that his 'residual functional capacity assessment used at steps 4 and 5" later in his decision reflected the 'degree of limitation' that the ALJ had found in the 'mental function analysis.'" *Id*.  In view of these findings, the Sixth Circuit wrote, "[w]e have previously reasoned that, depending on the context, similar statements can be sufficient to demonstrate that the ALJ adequately considered all of a claimant's medical impairments in formulating a residual functional capacity analysis." *Id*. (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020)).  The Court thus concluded that, "[c]onsidering the substantial evidence supporting the ALJ's findings that [the claimant's] limitations were no more than mild and the ALJ's repeated statements that it took all of [the claimant's] limitations into account,"

the ALJ "adequately accounted" for the claimant's mild mental limitations in crafting the claimant's RFC. *Id.*

Much like the ALJ in *Napier*, the ALJ here noted frequently in crafting E.G.C.'s RFC that she was doing so in consideration of the entire record, thus including her aforementioned findings of mild mental limitations. In fact, the ALJ here specifically acknowledged that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [R. 9 at 26.] This is the same language, verbatim, that the Sixth Circuit found sufficient in *Napier*. In other words, in view of *Napier*, the record here shows that the ALJ adequately accounted for E.G.C.'s mild mental limitations in crafting the claimant's RFC. The ALJ did not err by failing to include the mild mental limitations in the RFC, nor did she err by failing to more explicitly explain why she did not do so.

E.G.C. cites to a litany of other district court opinions from around the United States in which the district courts found reversible error in the ALJ's failure to give any mention to the non-severe mental impairments. [R. 10 at 9-14.] The persuasive value of those cases, however, is outweighed by the binding precedent set forth in *Napier*. This is especially true here where the Court is faced with language substantively identical to that which the Sixth Circuit found sufficient under the social security regulations. The same logic applies to E.G.C.'s citation to *Richardson v. Saul*, a published opinion from this district which predates the Sixth Circuit's opinion in *Napier*. 511 F. Supp. 3d 791, 798-99 (E.D. Ky. 2021). The Court acknowledges that the indicia here of the ALJ's consideration of the non-severe mental impairments is minimal. Yet, the standard set forth by the Sixth Circuit in *Napier* demonstrates that such a minimal

9

showing is sufficient under the regulations.  Consequently, the Court cannot find that the ALJ committed reversible error on this basis.

**2**

Next, E.G.C. further contends that the ALJ committed reversible error because he "failed to either adopt or reject and explain his rejection of limitations offered by a medical source whose opinion he found partially persuasive." [R. 10 at 15.]  In other words, E.G.C. contends that the ALJ did not properly conduct the supportability and consistency analysis with respect to the opinion of nurse practitioner Amber Johnson.  The Court disagrees.

Pursuant to 20 C.F.R. § 416.920c, an ALJ must consider all medical opinions contained in the record.  There are several factors an ALJ must consider when evaluating medical opinions: "(1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; (5) and 'other factors that tend to support or contradict a medical opinion or prior administrative medical findings.'" *Gorman v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 111313, at *11 (E.D. Ky. June 23, 2022) (quoting *Rodriguez v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 47855, at *5 (M.D. Fla. Mar. 17, 2022).  The regulation provides that while all factors are to be considered, the most important considerations are the supportability and consistency of the medical opinion. 20 C.F.R. § 416.920c(b)(2).  Often, once the ALJ has examined the totality of the evidence in the record, contradictions and inconsistencies become apparent.  In such circumstances, it falls to the ALJ to "[examine] conflicting evidence, [weigh] its probative value, and [reach] a conclusion." *T.B. v. Bisignano*, 2025 U.S. Dist. LEXIS 260390, at *8 (E.D. Ky. Dec. 17, 2025); see also *Sallaz v. Comm'r of Soc. Sec.*, 2024 U.S. App. LEXIS 14411, at *7 (6th Cir. June 12, 2024) ("weighing conflicting evidence [is] properly within the ALJ's role"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[d]iscounting credibility to a certain degree is

10

appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence"). "'Supportability' means that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to her medical opinion, the more persuasive the medical opinion will be. *Hague v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 59325, at *6-7 (E.D. Mich. Mar. 30, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920(c)(1)). "'Consistency' means that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the medical opinion will be. *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

In E.G.C.'s view, the ALJ erred by failing to explain his reasoning for rejecting several limitations offered by Nurse Practitioner Watkins, whose opinion he considered to be partially persuasive. [R. 10 at 17.] In particular, E.G.C. provides that the ALJ neither adopted nor rejected Watkins's opinions regarding E.G.C.'s inability to perform the lifting required by light work, her postural limitations, her opinion that E.G.C. "would be absent from work four or more times per month," or her opinion that E.G.C. would require frequent restroom breaks. [*Id.* at 19.] At bottom, E.G.C. essentially takes issue with the length and specificity of the ALJ's persuasiveness finding regarding Watkins's opinions. She does not take issue, however, with the ALJ's determination that Watkins's opinion was partially persuasive.

The ALJ's actions with respect to Watkins's opinion do not amount to reversible error. "[C]ourts within this District have interpreted [20 C.F.R. §§ 404.1520c and 416.920c] as not requiring the ALJ to articulate the supportability and consistency to every impression within a medical source's opinion." *Hague*, 2022 U.S. Dist. LEXIS 59325, at *19. The regulations explicitly address the rationale behind this rule:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to

articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.  Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  The ALJ did not elaborate further on Watkins's opinion in these areas because he determined that these opinions were the non-persuasive portion of her opinion; in other words, this portion of the Watkins's opinion is why it was merely partially persuasive.  The ALJ, therefore, conducted a supportability and consistency analysis as to Watkins's functional opinion as a whole, finding that "the opinion overall is somewhat overstated in nature." [R. 9 at 29.]  The regulations clarify that this sort of analysis is sufficient.  At bottom, the ALJ conducted the requisite supportability and consistency analysis of Watkins's opinion pursuant to the regulation; that he did not conduct the same analysis for each and every opinion proffered by Watkins is immaterial.

Nor is there evidence to suggest that the ALJ somehow substituted his own lay opinion for the judgment of medical sources.  In addressing such questions, Courts distinguish between situations where the ALJ "substitutes his knowledge for that of a physician or medical expert and interprets raw medical data," from those where he "weigh[s] the medical and non-medical evidence before rendering an RFC finding." *Fowler v. Comm'r of the SSA*, 2022 U.S. Dist. LEXIS 152820, at *39 (N.D. Ohio Aug. 9, 2022) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010)).  Here, E.G.C. does not present evidence to indicate that the ALJ imparted his own lay opinion in place of those of medical experts.  Rather, the evidence strongly indicates that the

12

ALJ weighed the various medical and non-medical opinions – namely, those of Watkins, APRN Amber Johnson, and the State agency physicians, Dr. Daniel Meece and Dr. Donna Farmer, in conducting the requisite persuasiveness analysis. [R. 9 at 27-30.]  Consequently, there is no basis on which reversal would be appropriate.  Rather, the Court concludes that the ALJ's opinion was supported by substantial evidence in the record.

### III

E.G.C. essentially objects to the RFC that the ALJ determined in rejecting her application for disability benefits.  While the Court sympathizes with E.G.C.'s difficulties, its role is not to retry her case.  Instead, the Court finds that substantial evidence supported the ALJ's decision.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.  Plaintiff E.G.C.'s Motion for Summary Judgment **[R. 10]** is **DENIED**;

2.  The Commissioner's Cross-Motion for Summary Judgment **[R. 12]** is **GRANTED**;

3.  Judgment in favor of the Commissioner will be entered promptly.

This 6th day of July 2026.

Gregory F. Van Tatenhove
United States District Judge

13